UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
ST. PAUL FIRE AND MARINE INSURANCE
COMPANY and FIDELITY AND GUARANTY
INSURANCE COMPANY

                                  Plaintiffs                           **REPORT AND**
                                                                            **RECOMMENDATION**

                        - against-                                                 CV 04-1189 (JS) (WDW)

MELODY WINDOWS AND CURTAIN
WALL, INC., STEALTH WINDOWS, INC.,
STEALTH WINDOWS OF MASSACHUSETTS, INC.,
PARVIZ ROUHANI a/k/a PAUL (PARVIS),
ROUHANI and MAHVASH ROUHANI,

                                 Defendants.
-------------------------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

       This matter was referred to the undersigned by District Judge Seybert for a report and recommendation on whether a default judgment should be issued, and if so, for the amount of damages to be awarded. Plaintiffs complied with the court's request to serve and file papers supporting its damages claim. Although defendants were served with the court's order, they have not submitted papers opposing the damages sought. For the reasons set forth herein, the undersigned recommends that a default judgment be issued against the defendants, that the plaintiffs be awarded damages in the amount of **$816,416.36** for losses already incurred**,** and that defendants be ordered to post **$1,159,020.00** as collateral security against potential future losses.[1]

---

[1] The proposed Default Judgment submitted by plaintiffs provides for other declaratory and equitable relief not referred to the undersigned and, thus, not the subject of this report.

## BACKGROUND

Plaintiff Fidelity and Guaranty Insurance Company, and its parent company, plaintiff St. Paul Fire and Marine Insurance Company (collectively, "St. Paul"), are corporations authorized in the State of New York to conduct the business of suretyship. *See* Am. Compl. at ¶2. Defendant Melody Windows and Curtain Wall, Inc., is a New York based corporation, and defendants Stealth Windows, Inc., and Stealth Windows of Massachusetts, Inc., are corporations based in Massachusetts. *See* Am. Compl at ¶¶6-8. Defendants Paul (Parviz) Rouhani and Mahvash Rouhani are domiciliaries of New York. *Id.* at ¶¶9, 10. The defendants will be collectively referred to herein as the "Indemnitors."

On October 1, 2002, Paul (Parviz) and Mahvash Rouhani, in their respective capacities as Secretary and President of the corporate defendants, executed a General Agreement of Indemnity (the "Agreement") in favor of St. Paul. *Id.* at ¶13. The Agreement[2] provides that subject to certain conditions, St. Paul would issue surety bonds to secure the Indemnitors' construction projects. The bonds ensure if the Indemnitors default on a project, St. Paul will assume the Indemnitors' outstanding obligations and take all necessary actions to complete the defaulted project. *Id.* at ¶¶ 23-24. In order to receive the bonds, the Indemnitors agreed to jointly and severally indemnify and hold St. Paul harmless for its losses in completing the Indemnitors' project(s). *Id*. at ¶¶ 14-18; *see also* Agreement at ¶4. By the terms of the Agreement, St. Paul is entitled to recover for consulting and legal fees paid to investigate bond claims and to enforce the Agreement. Agreement at ¶4. St. Paul is entitled to settle any claim or liability made under its

---

[2]A copy of the Agreement can be found as Exhibit A to the Affidavit of Matthew L. Silverstein dated March 22, 2004.

surety bonds, any such settlement is binding upon the Indemnitors, and any vouchers or other evidence of payment are *prima facie* evidence of the fact and amount of the liability of the Indemnitors to St. Paul. *Id.* at ¶7. Furthermore, the Agreement provides that the Indemnitors must, upon St. Paul's demand, deliver collateral security to cover future contingent losses. *Id.* at ¶5.

Relying on the terms of the Agreement, St. Paul issued surety bonds to secure two of the Indemnitors' construction projects: the Wareham Project and the New Wood Project. *See* Am. Compl. at ¶ 1. Soon after the bonds were issued, St. Paul was notified that the Indemnitors had defaulted on the two projects. *Id*. at ¶¶ 25,29. St. Paul was thereafter notified that the Wareham contract had been terminated because of the default. *Id*. Pursuant to its obligations under the performance and material and labor bonds, *see* Silverstein Aff., Ex B, C, St. Paul paid $880,039 to cover all costs associated with completing the Wareham project. *See* Sworn Statement and Voucher of Expenses dated April 1,2005, at ¶¶ 6-22. Plaintiffs also anticipate that they may incur substantial costs to complete the New Wood project, which has not yet been terminated for default. *Id.* at ¶ 23-27. St. Paul estimates that an additional $1,159,020 is necessary as collateral security to guard against future potential losses. *Id.*

The original complaint in this action was filed on March 22, 2004. After defendants failed to respond, plaintiffs moved for default judgment on June 23, 2004, but later withdrew the motion in order to amend the complaint. The Amended Complaint was filed on September 23, 2004 and seeks, among other things, damages to reimburse St. Paul for past and potential future

3

losses resulting from its suretyship of the Indemnitors.[3]  *See* Am. Compl. at ¶ 3; *see also* Mem. of Law at pp. 1-3.  Defendants neither answered nor otherwise responded to the Amended Complaint, and on December 8, 2004, the Clerk of the Court certified that the defendants had defaulted.

## DISCUSSION

Adequacy of service is relevant to the determination of whether a default judgment can be entered against the defendants.  The Amended Summons and Amended Complaint were served on corporate defendant Melody Windows and Curtain Wall, Inc. through Amy Lesch, an agent authorized for service at the Secretary of State of New York, and on corporate defendants Stealth Windows, Inc., and Stealth Windows of Massachusetts, Inc. through Jennifer Kagar, the registered agent for service for those two defendants.  *See* Aff. of Service, Gillespie Decl., Ex. R.  Service upon the corporate defendants was thus completed.  *See* Fed. R. Civ. P. 4(h)(1) & (2); B.C.L. § 306 (b)(1); C.P.L.R. §311 (a)(1); Mass. R. Civ. P. 4(d)(2).

This court finds that the individual defendants Paul (Parviz) and Mahvash Rouhani were also properly served.  Copies of the Amended Summons and Amended Complaint were left with Mrs. Savarese, the Rouhanis' co-tenant and a person of suitable age and discretion, at the Rouhanis' place of residence on October 8, 2004, and copies of the Amended Summons and Amended Complaint were subsequently mailed to the Rouhanis' residence on October 12, 2004. *See* Aff. of Service, Gillespie Decl., Ex. R.  Service was thus completed pursuant to C.P.L.R.

---

[3]The Amended Complaint also sought declaratory and equitable relief, including a restraining order preventing the transfer of the Indemnitors' assets.  The restraining order was previously granted by the court and will not be considered herein as a pending claim for relief. *See* Gillespie Decl. at ¶¶ 22,28.

§308 (2). Based on the affidavit, and the facts set forth in the memorandum and declaration of Stephen Gillsepie, the undersigned recommends that a default judgment be entered.[4]

      This court recognizes that while it is preferable for parties to engage each other on the merits rather than for a court to render a default judgment, *see Enron Oil Corp. v. Diakhara*, 10 F.3d 90, 95 (2d Cir. 1993), a default judgment is appropriate where the "adversary process has been halted because of an essentially unresponsive party." *Kim v. City of New York*, 1990 WL 83465, at *2 (S.D.N.Y. June 13, 1990) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). In the case at bar, the defendants are such unresponsive parties.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992). A default also "effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The

---

[4]In a letter to the court dated December 20, 2004, Ms. Rouhani indicated that she was overseas and that even though she was aware of her default status, she would be unable to address the default until she returned to the United States in February 2005. *See* December 20, 2004, Rouhani letter. Ms. Rouhani further indicated that any response to her letter should be mailed to her "address in New York." *Id.* Although this court notes the possibility that service upon Ms. Rouhani may have been made while she was abroad, Ms. Rouhani's letter confirms that the method of service was reasonably calculated to apprise her of the pending action. Moreover, even though Ms. Rouhani was aware of the default, she has submitted nothing further in response to the numerous papers served upon her at her home address where Ms. Rouhani herself indicated that all communications should be sent.

movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

As this court finds that entry of a default judgment is warranted, the allegations in the complaint are taken as admitted. This court must therefore decide the plaintiffs' right to the relief requested and the amount of damages to be awarded. St. Paul's requested relief relates to enforcing specific provisions of the parties' signed Indemnity Agreement. *See* Mem. of Law at pp. 9, 10; *see also* Agreement at ¶¶ 1,7,9(a),10,12. To establish the right to the relief requested, St. Paul has submitted the sworn factual affidavits of Matthew Silverstein and Todd Sherwill as well as documents supporting its damages claim in the form of the Sworn Statement and Voucher of Expenses ("Voucher"), which details St. Paul's past losses and potential future losses in honoring its obligations under the surety bonds.

**Damages Relating to Losses Already Incurred:**

Indemnification provisions have long been upheld as enforceable by New York courts. *See American Motorists Ins. Co. v. United Furnace Co.*, 699 F. Supp. 46, 49 (S.D.N.Y. 1988), *rev'd on other grounds*, 876 F.2d 293 (2d Cir. 1989); *Fidelity & Deposit Co. v. Refine Constr. Co.,* 1984 WL 536, *3 (S.D.N.Y. June 27, 1984). The enforceability of indemnity agreement provisions enabling a surety to settle an action and bind its principal is also established in New York. *See Home Indemnity Co. v. Wachter*, 115 A.D.2d 590, 496 N.Y.S.2d 252 (2d Dep't 1985) (holding that parties who have executed an indemnity agreement are contractually bound to accept any good faith determination by the surety with respect to the settlement of any claim).

Paragraph 7 of the Indemnity Agreement provides that St. Paul was entitled to settle or compromise any claim or liability made under its surety bonds, that the settlements would be

binding upon the Indemnitors, and that any vouchers or other evidence of payment would serve as *prima facie* evidence of the fact and amount of the liability of the Indemnitors to St. Paul. *See* Agreement at ¶ 7. New York courts have upheld the validity of clauses similar to Paragragh 7 of the Agreement. *See Fidelity & Deposit Co.*, 1984 WL 536 at *2; *see also Petreykov v. International Fidelity Ins. Co.*, 1999 WL 1186807, *4 (E.D.N.Y. October 12, 1999) (holding that *prima facie* evidence clauses are valid); *Home Indemnity Co.* 496 N.Y.S.2d at 253 (upholding the enforceability of an indemnity agreement provision allowing vouchers or the sworn statement of an officer of the surety to be used as conclusive evidence of the indemnitor's liability). In the absence of any proof from defendants disputing the payments, the court accepts the Sworn Statement and Voucher as *prima facie* evidence of St. Paul's expenditures. *See, e.g., Home Indemnity Co.,* 496 N.Y.S.2d at 253; *United States Fidelity & Guaranty Co. v. Green,* 34 A.D.2d 935, 311 N.Y.S.2d 779 (1st Dep't 1970).

After the Indemnitors defaulted on the Wareham Project, St. Paul paid out the following amounts to complete the unfinished work and settle meritorious claims against the Indemnitors for unpaid work:

| Payments Made To | Amount Paid |
|---|---|
| Modern Glass and Aluminum | $505,840.13 |
| Fenestration Architectural Products, LLC | $34,701.63 |
| U.S. Aluminum Corporation | $84,970.64 |
| Viracon, Inc. | $1,711.14 |
| J.E. Berkowitz, LP. | $3,570.14 |
| **Total Paid out for Wareham Project** | **$630,793.68** |

*See* Voucher at ¶¶ 7,8,10.

For the New Wood Project, St. Paul made three payments to Graham Architectural Products Corp. totalling **$87,712.33** to settle meritorious claims. *Id.* at ¶11. Thus, to complete work at the Wareham project, and to settle claims from unpaid subcontractors and suppliers under the Wareham and New Wood payment bonds, St. Paul suffered losses totalling **$718,506.01** and is entitled to recover that amount as actual damages.

Pursuant to Paragraph 4 of the Agreement, plaintiffs are also entitled to recover for consultation and professional fees spent in connection with overseeing the completion of the Wareham Project. Voucher at ¶ 13; *see also* Agreement at ¶ 4. New York law provides for such recovery. *See First Nat. Ins. Co. v. Joseph R. Wunderlich, Inc.,* 358 F. Supp. 2d 44, 57 (N.D.N.Y. 2004) (holding that reasonable attorneys fees, costs, and other consulting costs are expected when a surety exercises its exclusive right to seek indemnification under a general agreement of indemnity).

For surety consulting work, St. Paul retained the firm of Cashin, Spinelli & Feretti, LLC, and paid a total of **$97,508.43** for its consulting services in overseeing the completion of the Wareham Project. Voucher at ¶¶ 14,15. St. Paul also incurred miscellaneous expenses in the amount of **$401.92.** *Id.* at ¶ 20. The court recommends that plaintiffs be awarded **$97,910.35** in consulting and miscellaneous expenses.

As to legal fees expended, St. Paul retained the firm Cetrulo & Capone, LLC, for legal services related to the completion efforts and the settlement of claims under the bonds, and paid a total of $30,454.60 for its services, Voucher at ¶¶ 16,17, and retained the firm Westermann Hamilton Sheehy Aydelott & Keenan, LLP for legal representation in this indemnity action against the Indemnitors, and paid that firm $31,247.22 for its services. *Id.* at ¶¶ 18,19. St. Paul

8

incurred additional legal expenses of $1,920.82. *Id.* at ¶20-21. In total, St. Paul has paid $63,622.64 in connection with legal expenses and fees. Although the court finds that St. Paul is entitled to recover legal fees and expenses, it cannot recommend such an award on the record currently before it.

In support of the legal fees sought, St. Paul submitted only the Voucher, which merely lists invoices paid to the law firms with no description of the work performed. Chambers staff contacted plaintiffs' counsel and requested additional documentation of the attorneys' fees sought, including attorney affidavits and time records. Although that request was made several weeks ago, no additional documentation has been received. Accordingly, the court cannot make a determination as to the reasonableness of the attorneys' fees sought and cannot recommend an award of such fees at this time. Thus, the court recommends that St. Paul be awarded the $**718,506.01** paid out to settle claims, plus **$97,910.35** in consulting fees and miscellaneous expenses for a total award of **$816,416.36** in actual losses.

**Damages Relating to Potential Future Losses:**

Pursuant to Paragraph 5 of the Agreement, St. Paul has the right, upon a reasonable belief that it may incur a loss, to demand from the Indemnitors the delivery of "collateral security acceptable" to St. Paul to cover any contingent losses. Agreement at ¶5; *see also* Silverstein Aff. at ¶ 8. St. Paul agrees to return any unused portion of collateral upon termination of St. Paul's liability on the bonds. Agreement at ¶5.

St. Paul has identified at least one pending claim of over $516,000 that it may have to pay, and has estimated the potential loss, costs and expenses associated with that claim.[5] Voucher at ¶¶ 24-27. St. Paul has demonstrated its reasonable belief that additional losses may occur, and thus has established its entitlement under the Agreement to demand collateral security "acceptable" to it, and seeks collateral security in the amount of $1,159,020.00. Defendants have had ample opportunity to contest the amount of collateral security sought by St. Paul and have failed to do so. Accordingly, the undersigned recommends that defendants be ordered to deposit **$1,159,020.00** with St. Paul as collateral security against potential future losses.

## OBJECTIONS

A copy of the Report and Recommendation is being sent by the Court to plaintiffs by electronic filing. Plaintiffs are directed to serve a copy of this Report and Recommendation on defendants by certified mail, and to file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. §636(b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
September 2, 2005

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge

---

[5] St. Paul is apparently disputing this claim and anticipates additional investigation costs as a result. See Silverstein Aff. at ¶¶25-26.